Filed 7/22/26  P. v. Norris CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D085100 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD203169) |
| v. | |
| SIRRON NORRIS, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed and remanded with directions to correct the abstract of judgment.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene Sevidal, Assistant Attorney General, Donald W. Ostertag and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Sirron Norris was convicted in 2009 of two counts of first degree murder and four counts of attempted murder, among other offenses, arising from two separate shootings. He now appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6, as to the attempted murder counts only, arguing the trial court erred by denying his petition at the prima facie stage.[1] He also contends he was improperly sentenced to consecutive terms of life in prison without parole and his abstract of judgment must be amended to correct clerical errors. We affirm the trial court's order but remand for correction of the abstract of judgment.

BACKGROUND

In 2009, a jury convicted Norris of two counts of first degree murder. (§ 187, subd. (a).) The jury found true a special circumstance allegation that Norris committed the first murder by means of discharging a firearm from a motor vehicle (drive-by shooting special circumstance). (§ 190.2, subd. (a)(21).) The jury also found true a single special circumstance allegation that Norris was convicted of more than one murder in the same proceeding (multiple-murder special circumstance), as supported by both murder convictions. (§ 190.2, subd. (a)(3).) The jury further convicted Norris of four counts of attempted murder (§§ 664/187, subd. (a)), one count of discharging a firearm from a vehicle (§ 12034, subd. (d)), one count of shooting at an inhabited residence (§ 246), and one count of conspiracy to commit witness intimidation (§ 182, subd. (a)(1)). The trial court sentenced Norris to a prison term of 18 years, four months to life plus 150 years to life plus two consecutive terms of life without parole.

---

[1]    Further unspecified statutory references are to the Penal Code.

2

In 2011, we affirmed the judgment.[2] (*People v. Moss* (Dec. 9, 2011, D056500) [nonpub. opn.] (*Moss*).) The following summary of the trial evidence relevant to this appeal is taken from that opinion.[3]

"Norris and Moss were members of a gang known as Skyline Eastside Piru (Skyline) and belonged to a subset of that gang known as the Gangsta Pimp Mafia or GPM. The Skyline/GPM gang's major rivals included a gang called Lincoln Park.

"[¶] . . . [¶]

"Around 9:00 p.m. on February 26, 2006, [Curtis] Howard[, an associate of the Lincoln Park gang,] and [Danielle] Coleman met some friends (Simone Cameron and Ashanti Ward) at a 7-Eleven store in southeast San Diego. They decided to go to Howard's home nearby and drove there in their respective cars. Howard, wearing a green shirt [suggesting his association with Lincoln Park], drove Coleman's BMW car and Coleman sat in the front passenger seat. Cameron and Ward followed them in their car.

"As the two cars drove on Imperial Avenue, a dark Ford . . . [driven by Norris] pulled between their cars, and followed Howard's car as it drove on 60th Avenue and turned onto Radio Drive. When Howard stopped the BMW at a stop sign, the Taurus pulled alongside the BMW and [Moss] fired multiple gunshots into the BMW. Both Howard and Coleman were hit. Howard later died from his wounds, and Coleman suffered significant injuries.

---

[2] We considered Norris's appeal with that of his codefendant, Dominique K. Moss.

[3] Norris filed an unopposed request for judicial notice of the record on appeal in case number D056500. The motion is granted.

3

"[¶] . . . [¶]

"[Darnel King, Bobby Towers, Rashard Hall and Michael Murphy] lived on a street (San Onofre Terrace) within territory claimed by the Lincoln Park gang. They were not members of the Lincoln Park gang, but two of them were friends of Lincoln Park members.

"On March 26, [2006,] the victims were relaxing in a carport at Hall's house after dark. The group saw [Norris and Moss], wearing hooded sweatshirts and bandanas, walk out of the canyon. [Norris and Moss] stopped on either side of a nearby car, and Towers asked, "Who is that?" [Norris and Moss] then fired on the group. King was killed and Towers was wounded." (Footnote omitted.)

## DISCUSSION

### I.

### *No Error in Denial of the Section 1172.6 Petition*

A. *Proceedings on Petition for Resentencing*

In May 2024, Norris filed a petition for resentencing under section 1172.6, checking the boxes on the standardized form indicating (1) he had been prosecuted "under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine," (2) he "was convicted of murder, attempted murder, or manslaughter following a trial," and (3) he "could not presently be convicted of murder or attempted murder because of changes made to Penal Code [sections] 188 and 189." The trial court appointed counsel to represent Norris and obtained briefing from the parties.

4

In September 2024, the trial court held a hearing to determine whether Norris had made a prima facie showing of entitlement to relief.  Norris's counsel argued he was entitled to an evidentiary hearing on his petition because he "can be eligible for relief under any circumstances in which it is possible that a jury could impute malice" and a hearing would allow the parties to review the record to determine if any changes in the law regarding accomplice liability or imputed malice were applicable to him.  The People argued Norris is not entitled to resentencing under section 1172.6 because he was not convicted of murder or attempted murder under any now-invalid theory of liability contemplated by the statute.

The court explained that the evidence presented at trial showed Norris was guilty of murder and attempted murder as a direct aider and abettor who acted with the intent to kill.  The court then highlighted that the jury was instructed on direct aiding and abetting theories as to both the murder and attempted murder charges and was not instructed on felony murder or a natural and probable consequences theory of liability.  Based on the evidence and the instructions, the court concluded "[t]he only choice for the jury was to return guilty verdicts on the murder and attempted murders as a direct aid[er] and abettor."  The court found that, because Norris's murder and attempted murder convictions were not premised on a now-invalid theory, he is ineligible for resentencing under section 1172.6 as a matter of law.  Accordingly, the court denied the petition upon a finding Norris had not made a prima facie showing of entitlement to relief.

Here, Norris challenges the trial court's denial of resentencing as to his attempted murder convictions only.  We focus our analysis on those convictions.

B.   *Applicable Law and Standard of Review*

"Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) significantly limited the scope of [California's] felony-murder rule and eliminated liability for murder under the natural and probable consequences doctrine . . . ." (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 122; Stats. 2018, ch. 1015, § 1, subd. (f).)  It "also established a new procedure[, codified in section 1172.6,] to allow defendants who could not have been convicted under the new law to petition the sentencing court to vacate their murder conviction and resentence them on any remaining counts." (*Guiffreda,* at p. 122.)  Effective 2022, the Legislature amended section 1172.6 to encompass defendants convicted of

6

attempted murder, but only if they were convicted "under the natural and probable consequences doctrine." (§ 1172.6, subd. (a); see *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3.)

If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested. (*People v. Lewis* (2021) 11 Cal.5th 952, 962–963 (*Lewis*).) The People must file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subd. (c).)

In deciding whether a petitioner has made a prima facie showing under section 1172.6, "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." (*Lewis, supra*, 11 Cal.5th at p. 971 [cleaned up].) The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6]." (*Ibid.*) The record of conviction may include such things as the trial evidence, the jury instructions, and closing arguments from counsel. (*People v. Gallardo* (2024) 105 Cal.App.5th 296, 301; *People v. Lopez* (2022) 78 Cal.App.5th 1, 13 (*Lopez*).) However, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis,* at p. 972.)

A defendant seeking resentencing under section 1172.6 for an attempted murder conviction is only entitled to relief if his conviction could have been based on the natural and probable consequences doctrine. (§ 1172.6, subd. (a); *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457

7

(*Rodriguez*); *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 (*Lovejoy*); *People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*).) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*People v. Arellano* (2024) 16 Cal.5th 457, 469.) "For example, if the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

"A court's decision to deny a resentencing petition at the prima facie stage is a purely legal conclusion, which we review de novo." (*Lovejoy, supra*, 101 Cal.App.5th at p. 865 [cleaned up]; *People v. Nino* (2025) 111 Cal.App.5th 844, 853.)

C.    *The Trial Court Did Not Err by Finding Norris Ineligible for Resentencing Under Section 1172.6*

The People prosecuted Norris for attempted murder under a "kill zone" theory of liability. Accordingly, the trial court instructed the jury on the principles of attempted murder under this theory, including the requisite specific intent to kill, and did not instruct the jury on a natural and probable consequences theory.[4] Because this record of conviction shows Norris could

---

4    The court instructed the jury on attempted murder and the kill zone theory of liability, in relevant part, as follows:

"The defendant is charged in Counts Two, Six, Seven, and Eight with attempted murder.

"To prove that the defendant is guilty of attempted murder, the People must prove that:

1. "The defendant took at least one direct but ineffective step toward killing another person;

"AND

2. "The defendant intended to kill that person.

8

not have been convicted of attempted murder under a natural and probable consequences theory, he is facially ineligible for resentencing on his attempted murder convictions under section 1172.6.  (§ 1172.6, subd. (a); *Rodriguez, supra*, 103 Cal.App.5th at p. 457; *Lovejoy, supra*, 101 Cal.App.5th at p. 865; *Coley, supra*, 77 Cal.App.5th at p. 548.)

Norris does not appear to contest that the People did not prosecute him under, and the trial court did not instruct the jury on, the natural and probable consequences doctrine.  Rather, he argues we should interpret section 1172.6 to apply to the facts of his case for two reasons:  (1) the kill zone theory under which he was prosecuted for attempted murder allowed

---

"[¶] . . . [¶]
"A person may intend to kill a specific victim or victims and at the same time intend to kill anyone in a particular zone of harm or 'kill zone.' "

"In order to convict the defendant of the attempted murder of Danielle Coleman, the People must prove that the defendant not only intended to kill Curtis Howard, but also either intended to kill Danielle Coleman, or intended to kill anyone within the kill zone.  If you have a reasonable doubt whether the defendant intended to kill Danielle Coleman or intended to kill Curtis Howard by killing everyone in the kill zone, then you must find the defendant not guilty of the attempted murder of Danielle Coleman.

"In order to convict the defendant of the attempted murders of Bobby Towers, Michael Murphy, and Rashad Hall, the People must prove that the defendant not only intended to kill Darnell King, but also either intended to kill Bobby Towers, Michael Murphy, and Rashad Hall, or intended to kill anyone within the kill zone.  If you have a reasonable doubt whether the defendant intended to kill Bobby Towers, Michael Murphy, and Rashad Hall, or intended to kill Darnell King by killing everyone in the kill zone, then you must find the defendant not guilty of the attempted murders of Bobby Towers, MichaeI Murphy, and Rashad Hall."

the jury to convict him based on imputed malice, and (2) we should interpret section 1172.6 to apply to attempted murder convictions based on any theory of imputed malice, including the kill zone theory at issue here.[5] We reject the first contention and, thus, need not reach the second.

Both before and after Norris's trial, courts reinforced the principle that to be convicted of attempted murder a defendant must have harbored the specific intent to kill the victim. (*People v. Bland* (2002) 28 Cal.4th 313, 327 (*Bland*); *People v. Smith* (2005) 37 Cal.4th 733, 739; *People v. Canizales* (2019) 7 Cal.5th 591, 602 (*Canizales*).) This is so even under a kill zone theory of liability. A defendant may be guilty of attempted murder under a kill zone theory where he or she "create[d] a zone of fatal harm" with the "inten[t] to kill everyone present to ensure the primary target's death." (*Canizales,* at p. 607; *Bland,* at p. 329.) Under this theory, intent is not imputed from an actual killer to a nonkiller, or from one victim to another. (See *Bland,* at pp. 327–328 [under kill zone theory defendant's intent to kill is not implied or transferred from the primary victim to an unintended victim]; *Canizales,* at p. 607 [the kill zone is a "theory for establishing the specific intent to kill required for conviction of attempted murder"].) Rather, the defendant must act with the concurrent intent to kill both the primary target and everyone within the kill zone. (*Bland,* at pp. 329–330; *Canizales,* at pp. 602–607.)

Despite this authority, Norris argues the kill zone instruction that the trial court issued to his jury allowed it to convict him of attempted murder

---

[5] Norris's claim does not encompass any argument regarding his prosecution for attempted murder as an aider and abettor. Rather, he focuses only on the kill zone theory of liability, regardless of whether he was convicted as a direct perpetrator or an aider and abettor.

based on imputed malice because it allowed for liability based on an "intent to kill 'anyone' within the kill zone," rather than "everyone" in the kill zone. Specifically, he points to the trial court's instruction under former CALCRIM No. 600 that to convict him of attempted murder under a kill zone theory it had to find he intended to kill the deceased victim and intended to kill either the surviving victim or "*anyone* within the kill zone." (Italics added.) But the trial court further instructed the jury that "[i]f [it] ha[d] a reasonable doubt whether [Norris] intended to kill [the surviving victim(s)] or intended to kill [the deceased victim(s)] by killing *everyone* in the kill zone, then [it] must find [Norris] not guilty of" attempted murder. (Italics added.) When read in its entirety, this instruction did not permit the jury to convict Norris for attempted murder without a finding of the requisite specific intent to kill both the deceased and surviving victims. (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1241, 1243 (*Campos*) [reviewing analogous portion of kill zone instruction and finding, despite ambiguity, instruction was not inconsistent with *Bland*'s holding that kill zone theory requires an intent to kill "everyone" in the kill zone[6]].) This is particularly true in the context of

---

6      Although not addressed in *Campos*, the version of CALCRIM No. 600 at issue in that case is infirm under more recent case law for a different reason, i.e., it allowed for conviction of attempted murder under a kill zone theory where the defendant intended to "harm" everyone in the kill zone. (*Campos, supra*, 156 Cal.App.4th at p. 1241 [kill zone instruction stated, "If you have a reasonable doubt whether the defendant intended to kill [targeted victim] or intended to kill [nontargeted victims] by *harming* everyone in the kill zone, then you must find the defendant not guilty of attempted murder" (italics added)]; see *In re Lisea* (2022) 73 Cal.App.5th 1041, 1055 [this language "runs the risk of the jury finding defendant guilty of attempted murder not based on an intent to kill . . . , but by finding he intended to harm everyone in the kill zone"].) The version of the instruction the trial court issued here did not suffer from the same defect.

11

the jury instructions as a whole, which unambiguously directed the jury that to convict Norris of attempted murder it had to find he harbored the specific intent to kill everyone in the kill zone. (Cf. *People v. Stone* (2009) 46 Cal.4th 131, 138, fn. 3 (*Stone*) [suggesting jury would probably resolve any theoretical ambiguity caused by using the word "anyone," instead of "everyone," in the kill zone instruction in the context of the trial].)

In support of his argument, Norris cites *People v. Mumin* (2023) 15 Cal.5th 176, 193 and *Canizales, supra*, 7 Cal.5th at p. 607, which confirmed the kill zone theory requires a finding that the defendant intended to kill both a primary target and *everyone* within the kill zone. He also argues that, "[a]t the time of [his] trial and direct appeal, courts widely interpreted language in [*Stone*] as authority for the proposition that a primary target was *not* required for the prosecution under the kill zone theory." This authority confirms the holdings in *Bland* and subsequent cases that a defendant can be liable for attempted murder under a kill zone theory only if he intends to kill everyone in the kill zone. But it does not further Norris's contention that the version of CALCRIM No. 600 issued here, which used the term "anyone," allowed for a conviction of attempted murder based on imputed malice.

Norris also highlights post-*Canizales* revisions to CALCRIM No. 600 that require consideration of evidentiary factors in determining whether " 'the defendant intended to create a "kill zone" and the scope of such a zone.' " (*Canizales, supra*, 7 Cal.5th at p. 607 [identifying factors to consider "[i]n determining the defendant's intent to create a zone of fatal harm and the scope of any such zone"]; CALCRIM No. 600, 2023 rev.) But, again, he does not explain how these changes support his assertion that the

instructions issued to his jury allowed a conviction for attempted murder based on a theory of imputed malice.

Last, Norris would have us interpret section 1172.6 to apply to defendants convicted of attempted murder under any imputed malice theory, not merely the natural and probable consequence theory identified in the statute. He argues that such an interpretation would comport with the legislative intent behind the provision. We do not need to reach this issue, however. Because, as we have explained, Norris's conviction for attempted murder based on a kill zone theory could not have been based on imputed malice, he would not be eligible for relief even if we extended the reach of section 1172.6 as he suggests.

D.    *Any Improper Factfinding by the Trial Court Was Harmless*

Norris also contends that the trial court's order is erroneous because the court engaged in improper factfinding at the prima facie stage of review.

An order denying a section 1172.6 petition at the prima facie stage is reviewed for harmless error under the standard of *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Glass* (2025) 110 Cal.App.5th 922, 929 [applying harmless error review to claim that trial court improperly considered substantive facts in appellate court opinion at prima facie stage]; see *Lewis, supra*, 11 Cal.5th at pp. 973–975 [remanding to Court of Appeal to determine whether trial court error in summarily dismissing resentencing petition without appointing counsel and after reviewing appellate court's opinion affirming conviction was harmless under *Watson*].) Under this standard, "a petitioner whose petition is denied before an order to show cause issues has the burden of showing it is reasonably probable that if [the trial court had not erred] his or her petition would not have been summarily denied without an evidentiary hearing." (*Id.* at p. 974 [cleaned up].)

13

At the hearing to determine whether Norris made a prima facie showing of entitlement to resentencing, the trial court stated the evidence at trial established Norris was guilty of murder and attempted murder as a direct aider and abettor who acted with the intent to kill. The court may have properly based this conclusion on the record of conviction. (See *Lopez, supra*, 78 Cal.App.5th at p. 13 [the record of conviction may include the trial evidence].) But, even if the court made this finding based on improper factfinding or weighing of the evidence, any error was harmless.

In addition to discussing the trial evidence, the court explained "there was no instruction on felony murder or a natural or probable consequence theory" and "[t]he instruction(s) clarified the required intent to kill." The court then denied Norris's resentencing petition because he is ineligible for resentencing under section 1172.6 as a matter of law and, thus, the petition failed to make a prima facie showing of entitlement to relief. As we have explained, the trial court's conclusion that Norris is statutorily ineligible for resentencing under section 1172.6 is supported by the record of conviction. Accordingly, Norris cannot show it is reasonably probable that, absent consideration of the trial evidence, the court would not have denied Norris's petition at the prima facie stage.

## II.

### *Resentencing is Not Required with Respect to Norris's Consecutive Terms of Life Without Parole*

As we have stated, the jury convicted Norris of two counts of first degree murder and found true two special circumstance allegations. (§ 187, subd. (a)). For these convictions and allegations, the trial court sentenced Norris to two consecutive terms of life without the possibility of parole. Norris contends the court erred in imposing consecutive terms of life without

14

the possibility of parole because, "[r]egardless of how many special circumstances [are] found true, only one term of [life without parole] may be imposed."

We lack jurisdiction to consider the challenge to the judgment in this appeal from the denial of Norris's section 1172.6 petition at the prima facie stage. (See *People v. Hernandez* (2024) 103 Cal.App.5th 1111, 1114, 1117–1119, 1123 [appellate court lacked jurisdiction to correct unauthorized judgment on appeal from denial of section 1172.6 petition at prima facie stage because appellate jurisdiction does not lie "to correct an unauthorized judgment that has long been final and when there is no correlation between the alleged error in a final judgment and the appeal of an unrelated trial court order"]; but see *People v. Sanchez* (2026) 119 Cal.App.5th 1060, 1066, fn. 3 [recognizing "split of authority as to whether the [trial] court may correct an illegal sentence after the case is final, even in the absence of a specific statutory authority"].) But, even if we had jurisdiction to review this claim, we are unpersuaded.

In support of his argument, Norris cites only *People v. Montes* (2014) 58 Cal.4th 809, 874 for the proposition that "a defendant 'face[s] no additional punishment merely as a result' of multiple special circumstance findings." He takes *Montes* out of context. *Montes* did not hold that multiple sentences for multiple special circumstance murder convictions is prohibited, as Norris suggests. Rather, the court in *Montes* held that a special circumstance allegation need not be "reversed for being necessarily included within another special circumstance." (*Id.* at pp. 874–875.) In so holding, the court explained, the consequences of a true finding on any one of multiple special circumstance allegations is that the defendant becomes eligible for an increased penalty for the underlying crime of conviction. But the defendant

15

"face[s] no additional punishment merely as a result of the finding on [an additional] special circumstance allegation."  (*Id.* at p. 874.)

Contrary to Norris's argument, his sentence for two consecutive life without parole sentences for two separate special circumstance murders is not prohibited.  (See Cal. Rules of Court, rule 4.425(a) [factors relevant to decision to impose consecutive sentence are:  (1) "The crimes and their objectives were predominantly independent of each other"; (2) "The crimes involved separate acts of violence or threats of violence"; or (3) "The crimes were committed at different times or separate places"]; cf. *People v. Sandoval* (1992) 4 Cal.4th 155, 168, 197 [where jury returned one death verdict and three verdicts imposing sentences of life without parole for four special circumstance murder convictions, finding court did not err in requiring jury to return separate verdicts as to each murder victim and explaining "[a] defendant who kills more than one person may be convicted and punished for each murder"].)

III.

*The Abstract of Judgment Must Be Amended*

Finally, Norris argues the abstract of judgment must be amended to strike a special circumstance finding and to correct clerical errors.  We are not persuaded that a superfluous special circumstance allegation must be stricken but agree as to the clerical errors.

A.      *The Abstract of Judgment Does Not Reflect a Superfluous Special Circumstance Finding*

Norris argues that the record shows he was held liable for two multiple-murder special circumstances findings, one each for counts 1 and 5.  Because only one multiple-murder special circumstance is permitted, he contends, one finding must be stricken and the sentencing minutes and

16

abstract of judgment must be amended to reflect only a single multiple-murder special circumstance.

Norris is correct that only one multiple-murder special circumstance is permitted, and a superfluous special circumstance finding should be stricken. (*People v. Halvorsen* (2007) 42 Cal.4th 379, 422 ["Defendant correctly notes that two multiple-murder special-circumstance allegations were erroneously charged and found true in this case. In numerous cases involving the same kind of error, we have stricken the superfluous finding and concluded the defendant suffered no prejudice." (Citations omitted.)].) But he is mistaken that he has been held liable for two such special circumstances here.

The People charged, and the jury found Norris liable for, only two special circumstances. First, the jury found true the drive-by shooting special circumstance with respect to the murder charged in count 1. (§ 190.2, subd. (a)(21).) Second, the jury found true a single multiple-murder special circumstance, which related to the murders charged in both counts 1 and 5.[7] (§ 190.2, subd. (a)(3)). Because there was no superfluous multiple-murder special circumstance, there is nothing to strike.

_____

[7]    The verdict form for the multiple-murder special circumstance originally indicated it related to counts 1 and 4. Following the verdicts, the parties and the trial court recognized the error and acknowledged the special circumstance related to counts 1 and 5. At some point, the verdict form was modified in handwriting to reflect that it related to counts 1 and 5. In addition, with respect to counts 1 and 5, the abstract of judgment shows Norris was convicted pursuant to sections "[section]187[, subdivision (a)/[section] 190.2[, subd.] (a)(21)/," thereby creating ambiguity as to which special circumstance applied to which count. As we explain more fully below, on appeal from the original judgment, we ordered the abstract amended to clarify that the multiple-murder, not the drive-by shooting, special circumstance applied to count 5. (*Moss, supra*, D056500.)

17

B.	*An Amended Abstract of Judgment Must Be Issued in Compliance with Our Decision on Appeal*

The abstract of judgment indicates the drive-by shooting special circumstance applies to both the murder convictions in counts 1 and 5 and does not reflect the multiple-murder special circumstance at all.  In our decision on Norris's direct appeal from the original judgment, we remanded the action to the trial court with directions to amend the abstract of judgment "to reflect that the special circumstance appended to count 5 was a finding under section 190.2, subdivision (a)(3), and that count 11 was a nonviolent felony."  (*Moss, supra*, D056500.)  On remand, the trial court issued a minute order stating the sentence was amended nunc pro tunc in compliance with our directions and the abstract of judgment "is also corrected by virtue of this minute order."  But the court did not issue an amended abstract.

Norris contends, and the Attorney General does not contest, that the trial court's minute order after remand is insufficient to comply with our directions to amend the abstract.  We agree.  (§ 1213, subd. (b) ["If a copy of the minute order is used as the commitment document, the first page or pages shall be identical in form and content to that prescribed by the Judicial Council for an abstract of judgment."].)  Thus, remand again is warranted for the trial court to issue an amended abstract of judgment "to reflect that the special circumstance appended to count 5 was a finding under section 190.2, subdivision (a)(3), and that count 11 was a nonviolent felony."  (*Moss, supra*, D056500.)

## DISPOSITION

The order is affirmed.  The trial court is directed to amend the abstract of judgment to reflect that the special circumstance appended to count 5 was a finding under section 190.2, subdivision (a)(3), and that count 11 was a nonviolent felony.  The court shall transmit a copy of the amended abstract of judgment to California's Department of Corrections and Rehabilitation.


DO, Acting P. J.

WE CONCUR:


RUBIN, J.


BERMÚDEZ, J.